## HAY & TODD MANUF'G CO. v. VAN DYKE KNITTING CO. *et al.*

*(Circuit Court, E. D. Wisconsin.   March 5, 1892.)*

**1. PATENTS FOR INVENTIONS—ANTICIPATION—LADIES DRAWERS.**
    Letters patent No. 357,127, issued February 1, 1887, to William F. Kneip, are for an improvement in ladies' drawers, in which each half of the garment is composed of two pieces, one running the whole length, and being only wide enough at its widest part to encircle the leg, and the other of a strip generally rectangular in form, and attached at one of its longer sides to the vertical rear edge of the body portion of the larger piece, and at its lower end to the front margin of the main piece, thus giving the fullness in the rear rendered necessary by the contour of the figure.   *Held*, that the patent was anticipated by the Bradley patent (No. 108,505) for a combination garment, the lower portion of which was constructed in substantially the same manner.

**2. SAME—COMBINATION GARMENTS.**
    Letters patent No. 374,307, issued December 6, 1887, to the same person, claims a combination garment, comprising body and leg portions, made continuous with each other, the garment being separated at the back to a point above the waist line, and having strips inserted in the back, and secured, at one of their longer sides, to the edges of the main part of the garment, at their upper ends to both rear edges of the separated main parts, and at their lower ends to the front edges thereof.   The specifications state that the upper ends of the strips are tapering, and attached at both of their tapered edges to the margins of both adjacent edges of the main parts, and that "it is obviously not essential that the top and bottom ends of the inserted pieces should be shaped exactly as shown," and that in practice their form "will be modified to give a desired form to the garment, or to correspond with modifications in the shape of other parts."   *Held*, that this part of the specifications was essentially descriptive of the invention, and as the claim, thus broadened, would cover the Bradley patent and also the inventor's prior patent, the same was anticipated by them.

In Equity.   Bill by the Hay & Todd Manufacturing Company against the Van Dyke Knitting Company, John H. Van Dyke, and John H. Van Dyke, Jr., for infringement of a patent.   Bill dismissed.
    *Poole & Brown*, for complainant.
    *Van Dyke & Van Dyke*, for defendants.

GRESHAM, Circuit Judge.   On February 1, 1887, patent No. 357,127 issued to William F. Kneip for an improvement in ladies' drawers; and on December 6, 1887, patent No. 374,307 issued to the same person for improvements in an under-garment of the kind known as combination garments.   These patents were assigned to the Hay & Todd Manufacturing Company, and this suit was brought by the assignee against the Van Dyke Knitting Company, John H. Van Dyke, and John H. Van Dyke, Jr., for infringement.   While not limited to any particular kind of material, the invention covered by the first patent relates more especially to a construction of ladies' drawers out of fabric knitted flat, and wide enough to fold around the leg, but not of sufficient width to half encircle the lower part of the body.   The patent shows a single piece added to the rear edge of the body portion of the material, the lower end extending down to the seam which runs up the inside of the leg, with the under edge attached to the edge of the front upper part of the leg, and the side edge attached to the rear edge of the upper leg and body portion of the main piece.   This added piece gives the desired width to the body portion of the garment, and the fullness in the rear rendered necessary by the contour of the figure.   Its lower end, forming a gusset or gore at the inner upper end of the leg, gives the garment the required fullness, and enables the front portion of the main part to conform to the front of the figure.   The garment consists of two vertically divided halves, united in front, and provided with a string or other fastening at the rear ends of the waistband.   The specification thus described the invention:

"In drawers made in accordance with my invention, each side or half thereof is joined at the waistband in front, and is open behind in the usual manner, and each half, including the leg and body portion thereof, consists of two parts.   One of said parts forms the main body of the garment, and is formed by a piece of fabric extending the full length of the garment, and having a width at its widest part only sufficient to make the leg or tubular part of the garment, and the other of said parts is a strip of fabric, generally rectangular in form, and attached at one of its longer edges to the vertical rear edge of the body portion of the main part first mentioned, and at its lower end or shorter edge to the lower portion of the front margin of the said main or body part.   The said rectangular strip is made of the same length as the free edge of the main portion, measured from the upper end of the leg seam to the waistband, and of such width that, when sewed to the main part, the garment will be sufficiently large at the body or waist portion."

The specification also states:

"A main advantage gained by the novel construction above described is that the fullness in the upper and rear part of the garment necessary to a perfect and comfortable fit is thereby obtained, while at the same time the article consists of but few parts, of simple shape, which can be readily put together.   The novel construction comprising my invention has especial advantages as applied to knit goods of that kind made upon a Lamb machine, for the reason that the two parts above described as constituting each half of the garment may be readily and easily made upon a machine of this character.   Such machines are not usually adapted for knitting a very wide web, and, by reason of this fact, knit drawers produced by the use of these machines have usually been made of four main parts, each half consisting of

two parts much wider at their upper than at their lower parts, and united at the inside and outside of the leg, as above described."

It is further stated in the specification that the parts of the garment constructed as described may be attached to the waistband, or otherwise connected, as may be convenient or desirable; that the main feature of the invention is found in a garment embracing the two main or body pieces, in combination with the two inserted pieces; and that this construction is claimed broadly, without restriction. The single claim reads:

"The garment herein described and shown, each part or half of which consists of a part, $A^1$, united at the lower portion of its side margins to form the leg, and a part, $A^2$, of generally rectangular shape, secured at one of its longer sides and at its lower edge or end to the said part $A^1$."

The invention covered by the second patent relates to a combination under-garment intended more particularly for ladies. The body and leg portions are of one piece, having an opening in the rear extending upwardly from the crotch, with pieces attached adjacent to the opening to keep it closed, and thus cover and protect the body. These pieces are elongated, their ends pointed or gore-shaped, and they are secured on one side, throughout their entire length, to the rear vertical margins of the main parts of the garment from a point below the crotch upwardly, while only the tapered ends are secured on the other sides. Inserted, as stated, at their lower ends, these pieces enlarge the diameter of the upper part of the leg, while their free edges, extending across from one side of the garment to the other side, close the opening at the rear.

The specification says:

"The upper ends of the additional strips referred to are made tapering or pointed, and are attached at both of their tapered edges to the margins of both adjacent edges of the main parts of the garment. * * * It is obviously not essential that the top and bottom ends of the inserted pieces, C, C, should be shaped exactly as shown; and, in practice, the form of the said pieces will be modified to give a desired form to the garment, or to correspond with modifications in the shape of the other parts comprising the same."

The patent contains but a single claim, which reads:

"A combination garment, comprising body and leg portions, made continuous with each other, and separated at the back of the garment, to a point above the waist line, and strips, C, C, inserted in the back of the garment, and secured at one of their longer sides to the edges of the main part of the garment, said strips being attached at their upper ends to both rear edges of the separated main parts of the garment, and at their lower ends to the front edges of said parts, substantially as described."

If there is any substantial difference between these patents, it is slight. The combination garment covered by the second patent, below the waist line, is substantially, if not identically, the garment described and covered by the first. The lower ends of the added pieces are of the same shape—gore-like—in both patents, and they are inserted in the crotch for the same purpose, and produce the same result. If there is any substantial difference between the inventions, it is found in the attachment of the upper ends of the inserted pieces in the second patent. Mr. Melville E. Dayton, the only expert witness for the complainant, testified that

the upper edges of the added pieces in the first patent overlap as they do in the second; that they are made fast at the waistband by tape; that the only difference between the two inventions is that, in the second patent, the added pieces are made permanently fast, by sewing or otherwise, to one side of the garment, somewhat less than half their length from the top, while the other sides are permanently attached from top to bottom. This attachment of the pieces, causing them to permanently overlap, he thought was the feature of novelty in the second over the first patent. He did not limit the invention to inserted pieces V-shaped at their upper ends. Combination under-garments were old in the art before Kneip obtained either of his patents, and, if Dayton's construction of the second patent is correct, it was anticipated by the Bradley patent No. 198,505, for an improvement in combination garments, and by other patents of the same class. It is true that, in the first Kneip patent, the upper ends of the added pieces are not V-shaped or sharp-pointed, but the second Kneip patent is not limited to pieces so shaped at the top.

"It is obviously not essential," says the specification, "that the top and bottom ends of the inserted pieces should be shaped exactly as shown; and in practice the form of the said pieces will be modified to give desired form to the garment, or to correspond with modifications in the shape of the other parts comprising the same." This language was used, not for the purpose of illustrating or explaining the invention, but as descriptive of it. It clearly manifests an intention not to limit the claim to added pieces gore-shaped or sharp-pointed at their upper ends, but to cover pieces with their upper ends sharp-pointed or square, and attached to the garment by a horizontal seam, as in the Bradley patent. The latter patent shows the added pieces inserted at the crotch, and otherwise attached to the main body parts of the garment, as in the first Kneip patent, which was clearly anticipated, and practically abandoned in the argument. The combination garment, below the waist line, was old in the art. It was shown in the Bradley patent, and the first Kneip patent, and in others. It follows that, if the second Kneip patent is not limited to added pieces sharp-pointed or V-shaped at the top, it, too, was anticipated by the Bradley patent and the first Kneip patent. It is not so limited by its language, and the complaint's expert did not so limit it. The language quoted from the specification was used, not, as above stated, to illustrate or explain the operation of the invention, but to broaden the claim. If this patent were prior to the Bradley patent, it would doubtless be said, and with force, that it was infringed by a garment made in accordance with the latter invention, showing the inserted pieces square at their upper ends, and there secured by a horizontal seam. It is true that language employed in a specification to illustrate or explain the operation of an invention should not be read into the claim to broaden and destroy the patent. But it is also true that statements in a patent, employed, not to illustrate the operation of the invention, but to describe it, are material, and cannot be disregarded in determining the scope and breadth of the claim. The bill is dismissed for want of equity.